1  John F. Mounier Jr. (SBN 48377)
**APS ANIMAL PROTECTION ATTORNEYS**
2  **SAN FRANCISCO BAY AREA**
John.Mounier@att.net
3  35 Miller Avenue, Suite 206
Mill Valley, CA 94941
4  T 415.967-8361; F 415.621-2221

5

Attorneys for David Gizzarelli,
6  Guardian of Charlie

7

8



9  UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA
10

| 11 | David Gizzarelli, Guardian of Charlie | Case No. 12       6568 |
|----|---|---|
| 12 | Plaintiff, | **VERIFIED COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF** |
| 13 | | |
| 14 | vs. | |
| 15 | City and County of San Francisco; Animal Care and Control; Rebecca | Motion for T.R.O.: |
| 16 | Katz, Esq.; Vicious and Dangerous Dog Unit of the San Francisco Police | **IMMEDIATE EQUITABLE RELIEF** |
| 17 | Department; John Denny | **IS SOUGHT – CHARLIE IS TO BE EUTHANIZED JANUARY 2, 2013** |
| 18 | Defendants. | JURY TRIAL DEMANDED |
| 19 | | |

20  DAVID GIZZARELLI, by and through his undersigned counsel, brings this

21  Verified Complaint pursuant 42 U.S.C. § 1983 to save Charlie from the Death

22  Penalty, to address violations by the Defendants acting under color of county and
23

24  state laws [S.F. Health Code §§ 42(a)(g), 42.3, et seq.] which are facially

25  unconstitutional and unconstitutional as applied, for violation of Plaintiff's rights

26  under the Fourth, Fifth and Fourteenth Amendments; Plaintiff seeks retrospective

27  and prospective relief. *Plaintiff Respectfully Demands Trial by Jury.*

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

In the City and County of San Francisco a single police officer is assigned the duty of taking reports of alleged violation of the vicious dog law, to be the chief investigator of such reports, to be the main interviewer of the purported violator of the law and of witnesses and victims, and then to be the judge and jury, deciding the facts and the law without a specified burden of proof, and meeting out punishment with unfettered discretion. Although this system seems shocking, that is exactly how the City and County of San Francisco structures the process for evaluating the behavior of a dog and determining what remedies may prevent the dog in question from presenting future risk to the public.

This action is brought by DAVID GIZZARELLI, the guardian of Charlie, for equitable relief and monetary damages for violation of his civil rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. This action arises out of an illegal seizure of Charlie, an American Staffordshire Terrier one year and 10 months old, from DAVID GIZZARELLI by Defendants, and the subsequent deprivation of DAVID GIZZARELLI's property rights without due process of law.

DAVID GIZZARELLI as guardian to Charlie has the duty to make every effort to provide Charlie with a secure, happy and healthy life. The Defendants have every intention of euthanizing Charlie and depriving DAVID GIZZARELLI of his civil rights. At no time was DAVID GIZZARELLI provided with appropriate due process of law to justify the defendants' illegal and unlawful taking in violation of his civil rights.

-2-
VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES AND OTHER RELIEF
- DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
- U.S.D.C, NORTHERN DISTRICT OF CA CASE NO. -

1

## PARTIES

2

1.     **PLAINTIFF DAVID GIZZARELLI:** Plaintiff DAVID

3

GIZZARELLI ("DAVID GIZZARELLI") is a resident and citizen of the City and

4

County of San Francisco, CA. DAVID GIZZARELLI is the lawful guardian and

5

6

owner of Charlie, a one year and 10 month old American Staffordshire Terrier

7

canine companion to David. Even if Defendants kill Charlie, David seeks

8

prospective relief because he intends to become the guardian of other dogs.

9

Charlie is currently in custody of the defendants as a result of a government

10

cover up of official misconduct , and a subsequent unlawful and unfair action in

11

which one individual police officer [Defendant Denny] investigated David and

12

13

Charlie, interviewed David, assessed Charlie, assessed David, spoke to and

14

questioned the "victim" before the hearing, and then served as "hearing officer" for

15

David and Charlie, ordered that Charlie be taken into custody, and ordered that

16

Charlie be killed – all for a first time incident involving Charlie and a horse at the

17

Crissy Field off designated off leash area.

18

2.     **DEFENDANT CITY AND COUNTY OF SAN FRANCISCO**

19

20

("SAN FRANCISCO" AND included in the term "DEFENDANTS") is an

21

incorporated City and County in the State of California, with offices located at 1

22

Dr. Carlton B. Goodlett Place, City Hall, San Francisco, CA 94102. At all times

23

herein, the CITY AND COUNTY OF SAN FRANCISCO acted by and through its

24

agents, servants, and employees, including but not limited to REBECCA KATZ,

25

ESQ. AND DENNY.

26

27

28

-3-

3.    **DEFENDANT ANIMAL CARE AND CONTROL,** A DEPARTMENT OF THE CITY AND COUNTY OF SAN FRANCISCO: ("AC&C" and included in the term "DEFENDANTS") is located at 1200 15th Street, San Francisco, CA 94103, and has the duty to protect and is responsible for San Francisco's stray, injured, abandoned, neglected, and mistreated animals, as well as for the enforcement of all state and local Animal Control and Welfare laws. At all times herein, the AC&C Department acted by and through its agents, servants, and employees, including but not limited to REBECCA KATZ, ESQ. AND DENNY.

4.    **DEFENDANT REBECCA KATZ, ESQ.**, Director of Animal Care and Control ("ATT. KATZ" AND included in the term "DEFENDANTS"), works for and directs the AC&C which is located at 1200 15th Street, San Francisco, CA 94103.  At all relevant times, Att. Katz was acting in her capacity as the agent, servant, and employee of CITY AND COUNTY OF SAN FRANCISCO.  At all relevant times and in all actions described herein, Att. Katz was acting under color of law and pursuant to her authority as Director of the CITY AND COUNTY OF SAN FRANCISCO AC&C DEPARTMENT.  She is sued in her individual and official capacities; Plaintiff seeks injunctive relief, compensatory damages, exemplary damages and attorney's fees and costs against Att. Katz.

5.    **DEFENDANT VICIOUS AND DANGEROUS DOG UNIT OF THE SAN FRANCISCO POLICE DEPARTMENT** ("VDDU") is located at 1200 15th Street, San Francisco, CA 94103 (sharing location with AC&C).

"The Vicious and Dangerous Dog Unit (VDDU) investigates incidents involving dogs that exhibit menacing and/or aggressive behavior. The VDDU encourages the public to immediately notify police whenever a dog bites, attempts to bite, lunges or chases a person or any domestic animal so that the police may secure the scene, render aid and document the incident in a police report. These police reports will be forwarded to the VDDU who will then evaluate each incident to determine the best means to ensure public safety." [Source: San Francisco Police Department Website - http://sf-police.org/index.aspx?page=86]

"The purpose of a Vicious and Dangerous Dog Hearing is to protect the health, safety and welfare of the public by determining which remedies would prevent the dog in question from presenting future risk to the public. Such remedies may include obedience training, muzzling, property inspection (containment of the dog) or, more often than not, educating the dog owner to make a specific change as to how the dog is controlled." [Source: San Francisco Police Department Website - http://sf-police.org/index.aspx?page=86]

6. **DEFENDANT JOHN DENNY** ("DENNY" AND included in the term "DEFENDANTS") works for the CITY AND COUNTY OF SAN FRANCISCO POLICE DEPARTMENT'S VICIOUS AND DANGEROUS DOG UNIT which is located at 1200 15th Street, San Francisco, CA 94103 (the same location as AC&C). At all relevant times, Denny was acting in his capacity as the agent, servant, and employee of CITY AND COUNTY OF SAN FRANCISCO; Denny was acting under color of law and pursuant to his authority as representative and zealous advocate of CITY AND COUNTY OF SAN FRANCISCO POLICE

DEPARTMENT'S VICIOUS AND DANGEROUS DOG UNIT.  He is sued in his individual and official capacities for compensatory & exemplary damages.

7.   **CHARLIE** - Charlie is a one year ten month old loving American Staffordshire terrier, and for all intents and purposes, is still an adolescent puppy. Charlie is a companion, an inspiration, and a source of great joy and happiness to his guardian and owner, David Gizzarelli.

## JURISDICTION

8.   Jurisdiction is proper in the Northern District of California Federal District Court pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

9.   Supplemental jurisdiction is proper in the Northern District of California Federal District Court as to any state law claims pursuant to 28 U.S.C. § 1367 in that said claims are so related that they form part of the same case or controversy.

10.   This action is not barred from being heard in the Northern District of California Federal District Court pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), as there is no ongoing state proceeding to declare the S.F. Health code unconstitutional, and the action does not challenge any state interest or procedure. Plaintiff is appealing denial of a writ in which the Superior Court found that "substantial evidence supported respondent's decision" [Exhibit 7, attached].

## VENUE

11.   Venue is proper in the Northern District of California Federal District Court pursuant to 28 U.S.C. §1391(b) in that the Defendants reside and/or work within the City and County of San Francisco which is located in the Northern

District of California <u>and</u> a substantial part of the events or omissions giving rise to the claim occurred within the Northern District of California.

## DIVISIONAL VENUE

12. Divisional Venue is proper in the San Francisco Division of the Northern District of California Federal District Court pursuant to Civil Local Rule 3-2(d) in that the case arises from the City and County of San Francisco, CA.

## GENERAL ALLEGATIONS

13. Charlie is a one year ten month old male American Staffordshire Terrier loving and caring family dog. Charlie loves to run and play. Charlie is up to date on all required vaccinations. Charlie was the canine companion of David Gizzarelli and his family in San Francisco, California.

## CHARLIE & DAVID GIZZARELLI

14. David Gizzarelli became Charlie's guardian and owner in March 2011. Charlie was a small puppy at that time. Charlie and David were constant companions, almost always together during the work day, and enjoying each other's company during off work hours and weekends. From the first night Charlie was in the David Gizzarelli home, he was affectionate and cuddly. Charlie got along well with David's friends and family. Charlie is a sweet dog and David is doing everything he can to save Charlie.

## FACTUAL BACK GROUND

15. Charlie is on death row for a first time offense!

<u>June 6, 2012</u> – Charlie *first in custody* of AC&C – Charlie was neutered, then returned by Denny to David Gizzarelli on or about June 13, 2012.

-7-

1    On July 6, 2012 Charlie was with David all day; they did not go to or near
2    Crissy Field on July 6, 2012.

3    On August 6, 2012, Charlie was 1.5 years old and he was jogging and
4    playing on a field with other dogs inside Crissy Field designated off leash area in
5    the Golden Gate National Recreation Area.

7    Next, a Park Police Officer named Eric Evans rode his recently transported
8    thoroughbred race horse "Stoney" onto Crissy Field and into the area where
9    Charlie and the other dogs were playing. Charlie being a puppy ran over to the
10   horse and the rider, sniffed the horse, began to bark, and then a scuffle occurred.
11   The horse and Charlie were both injured and a short 200 yard chase back to the
12   stables ended the encounter.

14   Injuries to the horse are described by the U.S. Park Department as
15   "lacerations and stitches" in a television interview broadcast by KTVU Channel 2
16   on August 8, 2012 (Defendant Denny is also interviewed in the broadcast – please
17   see Paragraph 18, page 9, lines 20-27 for Denny's statement). The August 8, 2012
18   broadcast can be viewed online at http://www.ktvu.com/videos/news/san-
19   francisco-police-horse-recovering-after-pit/vdCMx/.

21   16.    On August 6, 2012 Charlie was delivered to the care and custody of
22   Defendant Animal Care and Control following the incident; on information and
23   belief, on August 6, 2012 Defendant Denny observed and assessed Charlie while
24   Charlie was in the care of AC&C.

25   17.    On August 7, 2012 Defendant Denny questioned and interviewed
26   David Gizzarelli when David went to AC&C to pick up Charlie. Denny asked

28
-8-

1    David questions about Charlie, including how long David had been Charlie's

2    guardian, if Charlie had been sent to classes and other questions about Charlie's

3    behavior. David answered all of Denny's questions.

4
5    18.    At the same time, on August 7, 2012, Denny told David that the

6    federal park police had complained about Charlie and that there would be a hearing

7    about Charlie on August 23, 2012 at City Hall. Denny said to David, on August 7,

8    2012, that since Charlie had not caused trouble before that David had nothing to

9    worry about. Denny also told David that he knew that David had objected to and

10   was disappointed that Charlie had been neutered (when Charlie was *first in custody*

11   of AC&C) by the ACC – but, Denny told David that that had nothing to do with

12
     the hearing.
13

14        Denny did not hand David any written notification of the hearing.

15        David did not receive any written notification of the August 23, 2012

16   hearing from any other person.

17        On August 7, 2012 Denny gave a television interview to KTVU Channel 2,

18
     San Francisco, CA about Charlie in which he stated that he had released Charlie to
19
     David with instructions to keep Charlie on a leash.
20

21        Denny stated in the television interview that "the dog doesn't have a history

22   of aggressive or menacing behavior in the past." Denny explained in the interview

23   that Charlie had been released to David and stated that "the dog should not be off

24   leash while in public, and he [David] agreed to that." Denny's August 7, 2012

25   interview was broadcast on KTVU on August 8, 2012 and can be viewed at
26

27

28

1   http://www.ktvu.com/videos/news/san-francisco-police-horse-recovering-after-
2   pit/vdCMx/.

3       19.    David showed up for the August 23, 2012 hearing at City Hall at the
4   time that Denny told him about. Because Defendant Denny had explained to David
5   on August 7, 2012 that he had nothing to worry about, David did not bring any
6   witnesses and did not prepare for the hearing; David did not consult a lawyer
7
8   before the hearing because Denny told him that he had nothing to worry about.

9       The San Francisco Police Department describes the hearing procedure in
10  these words: *The hearings are informal and open to the general public. Cases are*
11  *heard under the auspices of an administrational hearing. A hearing officer shall*
12  *be appointed to hear the cases. There is no jury nor will anyone be required to*
13  *testify under oath. The hearings shall be recorded.* [Source: SFPD Website -
14
15  http://sf-police.org/index.aspx?page=86]

16      At the hearing Defendant Denny was the judge or hearing officer.

17      David was not given any written notice of the hearing at the hearing itself.
18  David was never given a copy of the Health Code sections that he now understands
19  applied to the hearing.
20

21      David was not given any documents or other papers by Denny or any other
22  person when he showed up at the hearing.

23      David was not given a "packet of documents" when he attended the hearing.
24  David entered the hearing without any documents because he did not know that
25  any would be helpful or necessary; and, he left the hearing without any documents
26  because none had been provided to him.
27

28                                          -10-

1    Officer Evans of the U.S. Park Police stated (not under oath) that he fell off

2    of his horse Stoney and lost consciousness. Nevertheless, Officer Evans was

3    allowed to discuss what other officers did or reported to him. This is bald naked

4    hearsay, not supported by any competent evidence.

5

6    At the so-called hearing, Officer Evans and David discussed the event at

7    Crissy Field. There was some discussion about the injuries to Stoney and to

8    Charlie. David said that he was sorry that Stoney was injured, and explained that

9    Charlie had never seen a horse before.

10    There was no discussion at the so-called hearing of "the restrictions set forth

11    in the San Francisco Health Code"; there was no discussion of whether "the

12    restrictions set forth in the San Francisco Health Code would be [sufficient] to

13    restrictions set forth in the San Francisco Health Code would be [sufficient] to

14    protect the health safety and welfare of the community"; there was no discussion

15    about precautions that David might take to protect Charlie and to protect the

16    community; there was no discussion of "...which remedies would prevent the dog

17    in question from presenting future risk to the public. Such remedies may include

18    obedience training, muzzling, property inspection (containment of the dog) or,

19

20    more often than not, educating the dog owner to make a specific change as to how

21    the dog is controlled." [Source: San Francisco Police Department Website -

22    http://sf-police.org/index.aspx?page=86]

23    No documents were offered or produced or discussed at the hearing on the

24    subject of whether "the restrictions set forth in the San Francisco Health Code

25    would be [sufficient] to protect the health safety and welfare of the community."

26

27

28

1    The "record" of the so-called "hearing" is blank and empty of discussion on

2    the subject of "restrictions set forth in the San Francisco Health Code", or

3    precautions and safeguards for Charlie and for the public.

4
     David was never given notice that "restrictions" or "...which remedies
5
6    would prevent the dog in question from presenting future risk to the public" were a

7    subject of the "hearing", because (1) he never received written notice of the

8    hearing and (2) there was no discussion of these subjects at the "hearing."

9    After the hearing David learned that the recording of the hearing failed and

10   was unintelligible. After objecting to the City Attorney, David received a

11
     "transcript" prepared by the City Attorney. A copy of the "transcript" provided by
12
13   the City Attorney is attached as Exhibit 1 to this Complaint. A review of the

14   "transcript" reveals that no discussion of "restrictions" or other precautions took

15   place.

16   20.    After the "hearing", Defendant Denny issued an August 23, 2012

17   Statement of Decision convicting Charlie of an offense that allegedly occurred on

18
     July 6, 2012 at Crissy Field – however, Charlie was never at Crissy Field on July
19
20   6, 2012. There is no evidence in the record of any conduct by Charlie that

21   occurred on July 6, 2012.

22   Denny's Statement of Decision concludes (1) that Charlie is "Vicious and

23   Dangerous under the definitions of Article 1, Section 42(a) of the San Francisco

24   Health Code"; and, (2) "...that the restrictions set forth in the San Francisco

25   Health Code would be insufficient to protect the health safety and welfare of the

26

27

28                                              -12-

community". Denny ordered that Charlie be killed "humanely." A copy of the August 23, 2012 Statement of Decision is attached as Exhibit 2.

21. The Statement of Decision is void of "findings" on the subject of the "the restrictions set forth in the San Francisco Health Code would be insufficient to protect the health safety and welfare of the community" – the Statement of Decision merely recites the bald and naked "conclusion" that the "restrictions" would be "insufficient." Att. Katz holds Charlie and will carry out the kill order.

22. After the Statement of Decision was issued, David Gizzarelli discovered that no administrative record had been compiled. On November 28, 2012 the City Attorney lodged a document referred to as the "Administrative Record" which was not signed or authenticated by any person from either AC&C or from the San Francisco Police Department. David Objected to the lodging of a hearsay document that was not authenticated and filed an Ex Parte Motion to Strike the Administrative Record – which was denied without prejudice, the judge sending a message that we "would discuss that issue at the trial on December 6, 2012" [Ex Parte Motion attached as Exhibit 3].

23. On December 5, 2012 Defendant filed a "Declaration of Officer John Denny" purporting to authenticate the Administrative Record lodged and discussing Denny's interactions with AC&C concerning David and Charlie when he instructed AC&C "to release Charlie to his owner when Charlie was *first in custody*" [A copy of the "Hearing Officer's" Declaration is attached as Exhibit 4].

Plaintiff immediately objected to the Ex Parte Communication and requested that the Declaration be stricken as a violation of fairness and an improper

1 | ex parte communication between the City Attorney and the Hearing Officer. The
2 | City Attorney [Margaret Baumgartner, Esq.] contended that she represented the
3 | Hearing Officer and was privileged to consult and communicate with the Hearing
4 | Officer ex parte to her heart's content.
5 |

6 | 24. After receiving the so-called "Administrative Record" David learned
7 | that Defendants, including AC&C and Att. Katz and Denny, intentionally
8 | concealed and decided not to report to David an incident that occurred when
9 | Charlie was *first in custody* – Defendants deliberately decided not to report to
10 | David an incident in which Charlie reportedly lunged at and tried to bite an AC&C
11 | employee. This information would have informed and educated David, allowed
12 | him to consult with AC&C or other agencies and trainers, and would have
13 | provided David with information to use to protect Charlie ( as well as to protect the
14 | community from such incidents in the future). At true copy of an Excerpt from the
15 | "Administrative Record" documenting concealment and misconduct on the part of
16 | Defendants is attached as Exhibit 6.
17 |

18 | 25. The Superior Court issued its "Order Denying Writ of Administrative
19 | Mandamus" on December 10, 2012 [copy attached as Exhibit 7].
20 |

21 | David obtained a stay by operation of law through December 31, 2012 and
22 | needs this court to issue a stay and/or temporary restraining order so that the case
23 | on the merits can be decided without Charlie being killed.

24 | 26. On information and belief, the failure to provide Plaintiff with a
25 | proper hearing and a meaningful opportunity to be heard was the direct result of an
26 | official custom, policy, or practice of Defendants of effecting the deprivation of
27 |

28 |
-14-

property rights without the requisite due process. San Francisco's Vicious and Dangerous Dog reporting system, investigative structure, hearing procedures violate due process as set forth below and should be declared unconstitutional.

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983 for Fourth, Fifth and Fourteenth Amendment Violations

27.     Plaintiff hereby incorporates by reference the allegations of all the paragraphs set forth in this complaint including paragraphs 1 - 26 as though fully set forth herein.

28.     Acting under color of law and the authority of CCSF, defendants intentionally, negligently, and with complete and deliberate indifference to Plaintiff's rights caused Plaintiff to be deprived of his constitutional rights, including but not limited to those under the Fourth, Fifth and Fourteenth Amendments, by unlawfully and illegally seizing CHARLIE and arbitrarily determining that he should be killed.

29.     Defendants, under color of law, intentionally, negligently, and with complete and deliberate indifference to Plaintiff's rights, caused Plaintiff to be deprived of his constitutional rights, including but not limited to those under the Fourth, Fifth and Fourteenth Amendments, by failing to enforce the provisions of the United States Constitution concerning seizure of property and by promulgating, encouraging, and condoning customs, practices, and policies that result in illegal seizures of property. Exemplary damages should be adjudged against Denny & Att. Katz because of their intentional acts and indifference to Plaintiff's rights.

30.     Defendant City and County of San Francisco and Defendants implicitly or explicitly adopted and implemented a policy, custom, or practice permitting and/or instructing its employees to do the following, *inter alia*:

a.      To seize Charlie from his lawful owner, David Gizzarelli, without meaningful due process and in violation and disregard of his ownership rights;

b.      To remove Charlie to the Defendants' possession and/or to any other location without DAVID GIZZARELLI's consent and in violation and disregard of ownership rights;

c.      To fail to provide constitutionally sufficient due process to those whose animals are seized and detained as described above.

31.     In violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, the illegal actions of Defendants have deprived Plaintiff of his constitutionally protected rights to be free from:

a.      Unreasonable seizure;

b.      Procedural due process violation (deprivation of property);

c.      Procedural due process violation (deprivation of liberty);

d.      Substantive due process violation; and

e.      Taking without just compensation.

32.     The Defendants' possession of Charlie was fraudulently induced in violation of the 4th amendment of the U.S. Constitution. The fraud is described in Paragraph 24.

-16-
VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES AND OTHER RELIEF
-       DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
-       U.S.D.C, NORTHERN DISTRICT OF CA CASE NO.

33.     The actions of Defendants proximately caused the deprivation of Plaintiff's rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

34.     The actions of Defendants caused Plaintiff emotional distress, pain and suffering, and other damages.

35.     By their conduct, Defendants violated Plaintiff's federal constitutional and statutory rights under 42 U.S.C. § 1983.

36.     In addition to constitutional injury, the above-described conduct entitles the Plaintiff to other compensatory damages, including, but not limited to, loss of use/companionship, damages for physical injury, intentional infliction of emotional distress by violating a federal statute and the U.S. Constitution, attorney's fees, and other damages in amounts to be proven at trial.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 for Procedural Due Process Violations

37.     Plaintiff hereby incorporates by reference the allegations of all the paragraphs set forth in this complaint including paragraphs 1 - 36 as though fully set forth herein.

38.     Acting under color of law and the authority of City and County of San Francisco defendants intentionally, negligently, and with complete and deliberate indifference for Plaintiff's rights caused Plaintiff to be deprived of his constitutional rights, including but not limited to those under the Fourteenth Amendment, when they deprived Plaintiff of his rights in property without notice and an opportunity to be heard at a meaningful time and in a meaningful manner.

-17-
VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES AND OTHER RELIEF
-   DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
-   U.S.D.C, NORTHERN DISTRICT OF CA CASE NO.    -

39.     Defendants, under color of law, intentionally, negligently, and with complete and deliberate indifference to Plaintiff's rights, authorized, permitted, and tolerated the custom, policy, and practice of depriving individuals of rights to property without due process of law, by and through its official policymaker, and by promulgating, encouraging, and condoning customs, practices, and policies that result in deprivation of property rights without due process of law.

40.     The actions of Defendants proximately caused the deprivation of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution. Exemplary damages should be adjudged against Denny & Katz.

41.     The actions of Defendants caused Plaintiff emotional distress, pain and suffering, and other damages.

### THIRD CAUSE OF ACTION
### INJUNCTIVE RELIEF

42.     Plaintiff repeats, restates and realleges and incorporates by reference all of the allegations contained in the paragraphs of this complaint including 1 through 41 inclusive as if set forth herein in full.

43.     Jurisdiction is proper in this Court pursuant to 42 U.S.C. §1983. Defendants acting in their official capacities as agents and employees of Defendant City and County of San Francisco, are "persons" within the meaning of 42 U.S.C. §1983.

44.     Defendants implicitly or explicitly adopted and implemented a policy, custom, or practice permitting and/or instructing its employees to do the following, *inter alia*:

(a)    To seize Charlie from his lawful owner, David Gizzarelli, without due process and in violation and disregard of his ownership rights;

(b)    To fail to provide constitutionally sufficient due process to those whose animals are seized and detained as described above;

(c)    To arbitrarily decide to kill Charlie (and other dogs in the same position).

45.    All actions taken by Defendants and their employees in relation to Plaintiff and Charlie were under the color of law.

46.    In violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, the illegal actions of Defendants have deprived Plaintiff of his constitutionally protected rights to be free from:

(a)    Unreasonable seizure;

(b)    Procedural due process violation (deprivation of property);

(c)    Procedural due process violation (deprivation of liberty);

(d)    Substantive due process violation; and

(e)    Taking without just compensation.

47.    Plaintiff DAVID GIZZARELLI has not consented to Charlie's seizure and incarceration and has not been given a meaningful opportunity to be heard on the matter.

48.    In seizing Charlie, as set forth above, the Defendants have acted *ultra vires*.

-19-
VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES AND OTHER RELIEF
- DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
- U.S.D.C, NORTHERN DISTRICT OF CA CASE NO.

49.     If Charlie continues to debilitate because of inhumane incarceration, or be killed by defendants, DAVID GIZZARELLI will suffer immediate and irreparable harm for which there is no adequate remedy at law.

50.     Plaintiff requests injunctive relief, both preliminary and permanent, enjoining Defendants from continuing their possession of Charlie, in violation of David's rights to ownership of Charlie – and prohibiting Defendants from killing Charlie.

51.     Further, DAVID GIZZARELLI is entitled to an Order enjoining Defendants to implement protocols that provide owner-guardians constitutionally mandated due process upon seizure of property.  This includes, *inter alia*:

(a)     Written notice of a right to a hearing to petition for the return of the seized dog, Charlie;

(b)     Disclosure of the evidence against Charlie; and notice that David Gizzarelli had a right to be present and also had a right to an attorney at the hearing;

(c)     The opportunity to be heard in person and to present witnesses and documentary evidence within a reasonable period of time following the seizing of Charlie;

(d)     The right to confront and cross-examine adverse witnesses;

(e)     **A neutral and detached hearing body, including a neutral and detached hearing officer;**

-20-
VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES AND OTHER RELIEF
-     DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
-     U.S.D.C, NORTHERN DISTRICT OF CA CASE NO.     -

1    (f)    A written statement by the fact finders as to the evidence relied upon

2    and reasons for concluding that Charlie should or should not be returned and

3    explaining that there was no other alternative other than death;

4    (g)    A right to subpoena witnesses and documents;

5

6    (h)    Prior to the hearing, imposition of the preliminary burden on the

7    government to make a prima facie showing (i.e., at least probable cause)

8    justifying seizure and detention prior;

9    (i)    At the hearing, imposition of the of production and persuasion on the

10   government to prove by at least clear and convincing evidence its justification

11   to continued detention of Charlie; and

12

13   (j)    The right to appeal the decision of the hearing body, rather than

14   merely a Writ review of the hearing pursuant to CCP 1094.5 with a low

15   burden for the Defendants to maintain.

16   52.    There exists an actual and justiciable controversy between Plaintiff

17   and Defendants as to whether the Defendants violated Plaintiff's due process and

18   search and seizure rights with respect to Charlie under the Fourth, Fifth and

19

20   Fourteenth Amendments to the United States Constitution. Defendants' actions and

21   practices are unconstitutional because they fail to insure ample due process.

22   53.    Based on the actual controversy between the parties hereto as set forth

23   above, Plaintiff respectfully request that this Honorable Court enter judgment

24   declaring the rights and other legal relations of the parties hereto as to said

25   controversies.

26

27   **FOURTH CAUSE OF ACTION**

28
-21-
VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES AND OTHER RELIEF
-    DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
-    U.S.D.C, NORTHERN DISTRICT OF CA CASE NO.    -

## CONVERSION & UNLAWFUL DETAINER

54.    Plaintiff repeats, restates and realleges and incorporates by reference all of the allegations contained in the paragraphs of this complaint including 1 through 33 inclusive as if set forth herein in full.

55.    Plaintiff has asserted his possessory right to Charlie.

56.    Charlie cannot be euthanized pursuant to state law California Food and Agricultural Code § 17005 – public policy is to adopt and treat dogs.

57.    At all times relevant herein, Plaintiff has the absolute and unconditional right to advocate on behalf of Charlie and Plaintiff has never relinquished those rights to Defendants.

58.    DAVID GIZZARELLI has repeatedly demanded that the Defendants acknowledge his rights of advocacy on behalf of Charlie.

59.    Defendants have taken control of Charlie wrongfully, without authorization, without a warrant, under duress and under threat of imprisonment and in violation and disregard of plaintiff's rights.

60.    Defendants' conduct has caused Plaintiff 's damages which are continuing; exemplary damages are sought against Katz & Denny.

### FIFTH CAUSE OF ACTION
### DECLARATORY RELIEF

61.    Plaintiff repeats, restates and realleges and incorporates by reference all of the allegations contained in the paragraphs of this complaint including 1 through 60 inclusive as if set forth herein in full. Plaintiff brings this action for declaratory judgment.

62.     There exists an actual and justiciable controversy between Plaintiff and Defendants as to whether the defendants' actions are unconstitutional under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

63.     Based on the actual controversy between the parties hereto as set forth above, Plaintiff respectfully request that this Honorable Court enter judgment declaring the rights and other legal relations of the parties hereto as to said controversies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for relief as follows:

1.     Compensatory damages for Defendants' violations of Plaintiff's constitutional rights; exemplary damages against Katz & Denny as to proof;

2.     Injunctive relief, both preliminary and permanent, prohibiting Defendants from maintaining possession of Charlie, from Killing Charlie, and returning Charlie to his rightful owner;

3.     An award of costs, including reasonable attorneys' fees, incurred in connection with this legal action; as provided by 42 U.S.C. § 1988 or as otherwise allowed by law;

4.     A trial by jury on all issues so triable;

## INJUNCTIVE RELIEF:

5. For immediate injunctive relief to stay the killing of Charlie, both preliminary and permanent, enjoining Defendants from Killing Charlie,  holding possession of Charlie and incarcerating him with the City and County of San Francisco and Defendants in violation of Plaintiff's rights to ownership of Charlie.

6. For injunctive relief ordering and enjoining Defendants to implement protocols that provide owner-guardians constitutionally mandated due process upon seizure of property, including:

1  (a)   Written notice of a right to a hearing to petition for the return of the
2  seized dog, Charlie;

3  (b)   Disclosure of the evidence against Charlie; and notice that David
4  Gizzarelli had a right to be present and a right to an attorney at the hearing;

5  (c)   The opportunity to be heard in person and to present witnesses and
   documentary evidence within a reasonable period of time following the
6  seizing of Charlie;

7  (d)   The right to confront and cross-examine adverse witnesses;

8  **(e)   A neutral and detached hearing body, including a neutral and**
9  **detached hearing officer;**

10  (f)   A written statement by the fact finders as to the evidence relied upon
    and reasons for concluding that Charlie should or should not be returned and
11  explaining that there was no other alternative other than death;

12  (g)   A right to subpoena witnesses and documents;

13  (h)   Prior to the hearing, imposition of the preliminary burden on the
14  government to make a prima facie showing (i.e., at least probable cause)
15  justifying seizure and detention prior;

16  (i)   At the hearing, imposition of the of production and persuasion on the
17  government to prove by at least clear and convincing evidence its justification
    to continued detention of Charlie; and
18
    (j)   The right to appeal the decision of the hearing body, rather than
19  merely a Writ review of the hearing pursuant to CCP 1094.5 with a low
20  burden for the County to maintain.

21     7. Pending such process, enjoining Defendants from holding possession of
22  Charlie and keeping him incarcerated in a cage in their possession and from killing
23  Charlie;

24     8. From holding any further dangerous dog hearing related to Charlie or his
    owners;
25
                         **DECLARATORY RELIEF**
26     9.     Declaring that DAVID GIZZARELLI is the lawful advocate of
27  Charlie and that Charlie should be returned to DAVID GIZZARELLI forthwith;

28                                     -24-

10.     Declaring that the actions of Defendants in seizing and keeping Charlie violated DAVID GIZZARELLI's due process and search and seizure rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution;

11.     Declaring that Defendants be enjoined and restrained permanently from interfering or restricting DAVID GIZZARELLI's lawful ownership rights as to Charlie;

12.     Declaring judgment in Plaintiff's favor and against Defendants:

13.     Declaring that defendants' actions as applied and facially are unconstitutional under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

14. Declaring that Defendants be enjoined and restrained permanently from seizing animals without due process as it is unconstitutional under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

15. Declaring that there exists an actual and justiciable controversy between Plaintiff as Trustee and Defendants as to whether the defendants' actions were unconstitutional under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

16. Declaring that based on the actual controversy between the parties hereto as set forth above, Plaintiff respectfully request that this Honorable Court enter judgment declaring the rights and other legal relations of the parties hereto as to said controversies.

Dated: December 27, 2012     APS ANIMAL PROTECTION ATTORNEYS

By: _____
     John F. Mounier Jr.
     Attorney for David Gizzarelli,
     Guardian of Charlie

# Verification by Plaintiff Follows Exhibits

VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES AND OTHER RELIEF
- DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
- U.S.D.C., NORTHERN DISTRICT OF CA CASE NO.          -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## Exhibit 1

25

26

["Transcript" of August 23, 2012 Proceeding]

27

28

VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES AND OTHER RELIEF
-    DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
-    U.S.D.C, NORTHERN DISTRICT OF CA CASE NO.                    -

**David Gizzarelli, the guardian of 'Charlie', et al.**
**v. City and County of San Francisco, et al.**
**Case No. : CPF 12-512445, File No.: 130251**

**Interview of:  David Gizzarelli Hearing in the matter of 'Charlie'**
**Date:  08/23/2012**

*[Transcriber's Note:  Audio quality of the following transcribed recording was*
*poor and much of the conversation unintelligible.]*

MSPK:      Good afternoon. [unintelligible] Thursday, August 23, 2012. Your Hearing
Officer today is Officer Denny with the San Francisco Police Department. Officer Denny,
today we have three cases to hear. Our first one is going to be for dog owner Mr. David
Gizzarelli for a dog named Charlie. Our second case is going to be for Ms. Julie Ho for a
dog named Roscoe and our third case is for Mr. Moby for a dog name Kiki. I'd like to
call our first case for a dog owner Mr. David Gizzarelli for a dog named Charlie. Officer
Denny, in your packet you have a signed complaint from Officer Evans with the US Park
Police. You have a notice of hearing to the dog owner, you have a notice of hearing to the
complainant, you have a police report for US Park Police dated August 6th, 2012, and you
have Animal Control's history.

OFC. DENNY:      Thank you very much.

MSPK:      Officer Evans if I could get you to come up to the podium please. The tall one,
thank you.  If you can make that microphone comfortable, thank you.

OFC. DENNY:      Good afternoon Officer Evans, thank you from coming down. I'm
looking through the packet here and I'm aware of the police report but a lot of times it's a
lot easier just for someone to tell me what happened in plain language. So why don't you
tell me what happened.

OFC. EVANS:      Okay, good afternoon. On Monday the 6th of August, 2012, I was on
mounted patrol with my police mount named Stony. We were in the area of Crissy Field,
had been out on a patrol for a short while, about to return to the barn. The day was going
well and as we were walking we just stepped onto the grass area of Crissy Field in the
triangle corner section. I noticed a dog running in our direction towards us from a good
distance away across the field, started to try and access what I was going to do because
I'm new to the area, I've only been here a month. My horse has only been here a couple

Page 1 of 12

4

of months. That was his second day out on patrol with me and I had been warned repeatedly that San Francisco dog walkers and owners and very different, it's very political, it's very sensitive so all of this was going through my head but I determined at that point the dog was going to be a threat. So I readied myself, if you will, with Stony.

OFC. DENNY:     How far away—how far away when you noticed the dog was going to be a threat?

OFC. EVANS:     The dog was a good maybe two hundred plus feet away.

OFC. DENNY:     Two hundred feet away and—

OFC. EVANS:     But at a full charges towards my horse and I.

OFC. DENNY:     Okay, that's a pretty good indication.

OFC. EVANS:     Well yeah, I've—although we're new out here I have twenty-three years on the Department, seventeen years on horse mounted patrol in Washington D.C. We've had dogs before in D.C.

So I readied myself, thinking okay it's very political, it's very political here, here we go. I was by myself, I saw the dog charging and then I heard 'Charlie no. No Charlie, no.' And I looked beyond the dog and I saw a male running after the dog but he was at least another seventy-five, hundred feet behind the dog Charlie. Looked back at the dog who was obviously getting closer and recognized it to be a pit bull and that escalated things for me because I've, again, dealt with pit bulls in the past on the East Coast and it's never fun, particularly when they are attacking you. Then I heard the owner yelling or the man yelling 'Keep going Officer, keep going. Don't stop, keep going, turn around' which per my training you never do because then you're insinuated the dog to chase, to give chase.

Stony is a thoroughbred racehorse, off the track. He can run but that's not what you do in defense. So I stood there, I help Stony and when Charlie got to us he stopped a short distance away, maybe six feet, sniffed a couple of times, growled a couple of times and I thought okay it's not going to be that back and then he came around to my right side, jumped up, tried to bite my leg but he didn't get a grip because I have the leather riding boots on, slipped, fell to the ground and as I'm holding Stony because again per our training you try and keep the horse facing the dog, you don't want the dog to get behind you and again instinctually take the rear legs, take the belly, the gut to bring the animal down.

Page 2 of 12

So I'm trying to face Charlie with Stony and as I'm looking down I don't know whether Charlie ran directly under the horse or behind the horse but I—he ended up on the left side of Stony and I and bit Stony on the front leg and locked on. And Stony reared up and now—and I'm holding on for dear life obviously and as he's rearing up with the dog, the pit bull hanging from his leg and me trying to stay on and he's trying to get his balance we all go down. I land head-first, get knocked out briefly and after that I don't know their names but a man and woman who were driving by—because we weren't far from the roadside—had stopped, they came running across the grass, got me up off the ground and asked me 'Officer, Officer, are you okay, are you okay? What can we do to help?' And again, Stony is new, that was only his second day out on patrol so I knew he didn't know the area so I said we have to find the horse, he only knows where the barn is which wasn't that far away and so the wife insisted that the husband put me in their car and we give chase to try and catch the horse.

OFC. DENNY:     So Stony and Charlie—

OFC. EVANS:     Were gone. I looked around and you could not even see them. They were gone.

OFC. DENNY:     So you got knocked out?

OFC. EVANS:     Yeah.

OFC. DENNY:     Okay.

OFC. EVANS:     I landed on my head and my right shoulder and blacked out.

OFC. DENNY:     So when you came to—

OFC. EVANS:     It was only, it was only I don't know the exact amount of time, maybe—probably less than a minute or so, maybe a little over a minute, I don't know the exact amount of time but it was enough time for the man and woman to come over and get me up off the ground and ask me if I was okay. And I was of course dizzy and seeing stars, hearing birds, that whole nine. And they put me in their car and we began driving and traffic was completely stopped, everyone was crowded on the sides of the road and they're saying the horse went that way, the horse went that way, the dog's still chasing him. What Stony did was he went across I believe it's Mason and made the right turn and then the immediate left because that's the way we had just come down from the barn up that—down that hill. So that was the only way he knew and he, as horses will do, he instinctually ran to return to the barn, ie safety.

Page 3 of 12

6

He got to the barn. Because I was the only one working at the time the barn was completely shut. There are one, two, three—there are three access, four access doors into the barn. Stony ran up the hill at which point I was going to put it on the radio by the— my Sergeant at the time on duty was just coming down that same hill and he saw Stony running with the stirrups flapping.

OFC. DENNY:     Was your Sergeant mounted?

OFC. EVANS:     No, the Sergeant was what we say straight-leg, he was a regular street officer. But he was the supervisor on duty at the time and I had only just one week prior when they held a roll call to introduce me, welcome me to the San Francisco Field Office, one of the comments that I made to the staff was if you ever see a horse running across the Presidio with the irons flapping in the wind that's not a good sign because that means the officer's down somewhere. And we laughed, we kind of joked about it, but they knew I was serious. And so the Sergeant said as soon as he saw that he panicked because he figured I was down somewhere, I'd come off of Stony.

He got on the radio and said Car 803 priority, Park Police Horse Stony is running with the stirrups down and there's a black and white pit bull chasing him. At that time I was coming up the hill in the Lexus with the John Q. Citizen, I'm sorry I don't know his name, just trying to catch up to them. And again people were on the roadside stopping, telling us the dog's still chasing the horse, the dog's still chasing the horse.

Stony got to the barn, went to the first door, couldn't get in. That's when Charlie caught him and attacked. Bit him, chewed him on the legs, Stony broke free, ran to the next door, Charlie got him again, bit him, chewed him. Stony broke free. He did—witnesses said he did two laps around the barn going door to door to door trying to get in and he couldn't get in. There were two other horses out in the front paddock in front of the barn and they were panicking, freaking out. So Stony took off up the hill, sorry—

OFC. DENNY:     Take your time, take your time.

OFC. EVANS:     Stony took off up the hill, running. He didn't know at that point where to go, which was he was going, and the transmission came over the radio the horse is running towards the bridge, notify Bridge and Tunnel. And I'm listening to it but I couldn't do anything because I still hadn't caught up to him. And finally one of our motor officers, one of our motor officers was able to catch up to the horse and he said that Charlie was still chasing him. Sorry. He said that Charlie was still chasing him but he hadn't caught him but he was not stopping. He would not give up the chase and so he

Page 4 of 12

7

took his Harley Davidson, his police motorbike, and they're very loud, obviously, they're Harley's, they're very loud and so he ran, he slowed the bike down because he was behind Stony at the time, he slowed the bike down and got alongside Charlie and revved it really loud and hit the police siren which startled or scared Charlie. Charlie at that point ran to the side of the road and stopped. Then he continued to follow the horse who at that point going on Lincoln Boulevard made a left on Lendrum Court and again didn't know where he was so he—but he's still running because he thinks the dog is still chasing him. So Officer Floyd got on the radio and had two other officers who were in patrol cars knowing Lendrum Court was as—there's one way in and one way out on two ends of it. It's a small street, residential Street. He had the officers go in the opposite end with their cruisers and block the street off and he got off his motor and went to get—to catch up with Stony and eventually got him at the top of the hill and he was just completely covered, bites, gashes, blood. He lost two of his shoes, two of his horse shoes in the chase.

The Sergeant, car 803, was able to go to the road just under the bridge, the overpass where Officer Floyd advised that's where the dog had stopped and the Sergeant caught up with the dog and held the dog until Mr. Gizzarelli the owner was able to come there and take the dog.

Stony could barely walk so my partner went to the barn and got the truck and trailer, came back and we took Stony back to the barn.

I was—I had a severe headache. My shoulder muscles were aching but I didn't want to go to the hospital because I knew I couldn't leave Stony because Stony he's very, very attached to me, I'm his partner and the vet was on the way, hadn't gotten there yet. And so I stayed. The ambulance came to the barn to check me out, they wanted me to go to the hospital, I refused medical attention so I could be there with Stony when the vet got there. And the vet got there a short while later and worked on Stony for two hours and stitches and staples and that's pretty much what happened.

I have pictures and one of the shoes he ran out and other reports from the other officers involved.

OFC. DENNY:    Are those my copies, may I keep those? May I keep those?

OFC. EVANS:    I'm sorry? Oh, absolutely. Absolutely. And Charlie ended up chasing Stony for 1.6 miles which is pretty absurd in my opinion but—here's the, that's just a Google map of the route that they were running and the injuries, the vet's copy of the injuries.

OFC. DENNY:    Well, the question I have for you now, well the comment, what an experience. The question I have for you is how is Stony doing now?

OFC. EVANS:    The vet was here on Tuesday, two days ago, for his two-week follow up and Stony is healing very well, extremely well, but that said there's—there was ligaments and tendons torn and there was major muscle damage so there's a great possibility that he may not heal fully, he may not be able to return to police work. Sorry. He may be retired.

OFC. DENNY:    Retired as in sent up to a police horse retirement community? I know San Francisco Police when the horse retires they send them up to Sonoma County somewhere.

OFC. EVANS:    Yeah, I guess, if I'm understanding you correctly, yeah.

OFC. DENNY:    Okay. So Charlie is grabbed by your Sergeant. Did you Sergeant— how was Charlie's demeanor? Was the Sergeant able to grab him by the collar or who did that go?

OFC. EVANS:    Well, he didn't have a collar on, he didn't have a collar or a leash on and when I saw the owner running behind him on Crissy Field I could see the leash hanging around the owner's body. Mr. Gizzarelli had a pair of small shorts on and nothing else. He was bare on his torso with the leash hanging around his torso.

OFC. DENNY:    Okay. And did you—obviously Mr. Gizzarelli was—he was detained after this, correct?

OFC. EVANS:    Yes, sir. He was placed under arrest.

OFC. DENNY:    He was placed under arrest and he was—was he booked or cited?

OFC. EVANS:    Honestly I'm not certain what the difference is here. Again, I'm just here newly from the East Coast.

OFC. DENNY:    He was charged with—

OFC. EVANS:    If we—if we place someone in custody and transport them back to the station that's considered an arrest. If they're cited and released it's still considered an arrest so I'm not entirely certain what you mean by—

Page 6 of 12

OFC. DENNY:     I guess he was charged with four different offenses.

OFC. EVANS:     Yes, sir.

OFC. DENNY:     Including assault to a police officer, assault to a police horse, failure to restrain a pet and of course creating a hazardous condition.

OFC. EVANS:     Yes, sir.

OFC. DENNY:     How are you doing?

OFC. EVANS:     I'm sorry?

OFC. DENNY:     How are you healing up? Do you have any after-effects from all this?

OFC. EVANS:     Well, it depends on your opinion of after-effects. My right shoulder is still sore, I still get slight headaches. Apparently I had a mild concussion. Nightmares, would that be putting it a little dramatically? But it is what it is. Like I said, that was only my second day on patrol with my horse here. I've had him for two and a half years, he's my partner, brought him 3300 miles across country.

OFC. DENNY:     You trailered him?

OFC. EVANS:     No, we used a private company, Federal Government, because we had two horses to bring across, him and one other new one.

OFC. DENNY:     Well, it sounds like Mr. Gizzarelli here has been cited to the full extent of the situation and now we're dealing with the dog. Do you have any recommendations on what to do with the dog?

OFC. EVANS:     That's a really tough call for me. I mean, I grew up with dogs, I like dogs. However, mitigating circumstances are what they are. It's a pit bull, one of the articles he classified it as an American Staffordshire Terrier, it's still per San Francisco law it's a pit bull and for me to dog chased my horse for 1.6 miles. That's unheard of for any dog. The dog accomplished several bites, he has the taste of blood in him now. I don't see that dog returning as a docile controllable animal in an area where there are mounted police patrol or any horses for that matter. There are several areas where there is private horses, private riding stables where they ride along the beachfront. I don't—I don't see that dog ever being 'tame and domestic' enough for Mr. Gizzarelli to be able to

control the dog. And again I know I'm new in this area but in the interviews that they've had in the press and several people that I've spoken to it's—I'm getting the same answer over and over again, it's a very sensitive issue, Eric, it's a very political issue Officer Evans. That does not make it okay. That does not make it okay for Charlie to attack a Federal Police Officer. My horse, though he's an animal per the bill signed into law by President Clinton in August of 2000, he is a Federal Police Officer. He is protected by law and for any dog, Charlie or any other dog, to attack him and then pursue him for 1.6 miles that dog—my horse will never be the same mentally and that's another aspect. I don't even know whether he'll be able to go on patrol again as a police horse.

So when you equate that to a Federal Police Officer now being retired because of an attack by a dog what happens to the dog?

OFC. DENNY:      I see your point. Well I'm sure Mr. Gizzarelli is going to have to answer to this as the owner of the dog and—

OFC. EVANS:      And the other thing I might add if I can, something else that's new to me here this whole issue of voice control. I get it, they've explained it to me over and over and over again but again I read Mr. Gizzarelli's comments and his laissez faire attitude. One of the quotes was the dog was really, really fast, the horse was really, really fast. And that says what? That explains what? Your dog chased my horse. You dog attacked myself and my horse. How will you prevent this from happening again if you're put in that similar situation or for another dog or for a child in the area? How will you effectively prevent that from happening? I don't see that possible in my opinion.

OFC. DENNY:      Okay. Okay. Well, why don't you have a seat and we'll talk to Mr. Gizzarelli and get another perspective on what happened.

OFC. EVANS:      Thank you. I'm sorry, actually these were your copies too of the other reports. I was looking for them, they were under the folder.

MSPK:      Mr. Gizzarelli come up please.

OFC. DENNY:      [unintelligible] the point where you and Charlie down at Crissy Field and why don't you tell us what was going on at this time.

GIZZARELLI:      Me and Charlie—Charlie is a [unintelligible] me and Charlie do a lot of running together [unintelligible] I ran after him [unintelligible] I was scared [unintelligible] and I was trying to call the dog, I was trying to jump on the dog, I was trying to grab the dog but the dog is skinny [unintelligible] I was afraid to jump in there, I

11

was afraid I was going to [unintelligible] At that point what I saw is the dog kind of sit down and the horse kind of sit down [unintelligible] and then what I noticed was that the horse [unintelligible] whatever the situation [unintelligible] I was right there [unintelligible] He was focused on the horse. I didn't see any [unintelligible] and I was doing everything to try and jump on him, to try to get him, but every time I'd go to grab him the horse [unintelligible] So as I was saying the dog and the horse kind of went down, [unintelligible] the riding rolled off the horse and at that point the horse took off with Charlie chasing him. I continued chasing. I ran after the dog [unintelligible] I'm a good runner, I did my best [unintelligible] I ran all the way around up the street, couldn't find the dog or the horse so I started running around [unintelligible] I'm clear on that but I think there's definitely an issue there. While I respect the law of the land and respect [unintelligible] any dog, not just a pit bull and not just Charlie or my dog could have chased after [unintelligible] Me and Charlie and the fifty other dogs that were on the field at least that day we're all exercising our rights and—

OFC. DENNY:     [unintelligible]

GIZZARELLI:     That's correct. This incident, yes, but I'm you know I would be prepared to provide several articles of evidence showing that it's not just bull terriers.

OFC. DENNY:     I've been involved in incidents where other horses have been attacked by shepherds [unintelligible] dogs like Charlie but at the same time it is your responsibility from attacking anybody, it's your responsibility. You're the person in charge of the dog. The dog's going to do what it's going to do but it's up to you to prevent the dog from doing it. I don't—you can't leave it up to the dog to decide what to do so they can, the police could be having kangaroos running around there and it's still up to you to keep Charlie from chasing him, okay. You're almost implying that Charlie was provoked by the park putting a police horse in the park and I really want to make sure that you understand they're well within their rights and if the dog—the police horse is under control so it's not asking too much for the dog, okay.

GIZZARELLI:     My response to that officer would be that Charlie is a young dog and he had no history of ever attacking any animal, any person, causing any kind of problem at all. Charlie has hundreds of people that know him, that know he is a friendly animal. He's never had any incidents with any cats, any small dogs, any large dogs, any dog that he comes across he's very friendly with, he just sniffs, get to know them, they play. So when you're saying that I'm not controlling my dog I never had this incident happen before. Charlie has never seen a farm animal, a big large horse before. Why that doesn't constitute as any excuse what am I going by? I mean, I know Charlie as a beautiful, handsome, sweetheart dog until this day.

OFC. DENNY:     Lieutenant Brown would you [unintelligible] Have you seen these
yet?

GIZZARELLI:     [unintelligible]

OFC. DENNY:     Take a [unintelligible]

GIZZARELLI:     [unintelligible] but I mean as the officer was saying [unintelligible] I
mean, it's either that or limit the use of unleashed [unintelligible]. I'm not trying to
impose laws here I'm just saying that, you know, me and Charlie had our rights
[unintelligible]

OFC. DENNY:     [unintelligible] what if he saw a child that you haven't seen before or
he saw a somebody with a disability walking towards you? You see where I'm going
with this? It's up to you [unintelligible]  similar type of situation but Charlie first attacked
the officer's leg, okay, when he first got to Stony he didn't attack Stony immediately, he
bit the officer's leg and bit him on the boot and wasn't able to puncture. So now we have
an attack to a human and then a severe attack to a horse. Do you want a dog that will do
this? Are you willing to accept responsibility? Do you want to keep a dog that is willing
and able and nothing you can do about it once it's decided to set its mind on
[unintelligible] you chase somebody a mile and a half and [unintelligible] not let up until
[unintelligible] I just—see, [unintelligible] on Charlie there's always a chance that he's
going to pop out of a window of the car, he's going to jump out of the back of a truck or
you're going to open the front door of your house and he's going to go shooting out and
he's going to see something. You know, there's tremendous civil liabilities for something
like this too. You don't understand, I don't know whether you're putting money away
from your children's college or [unintelligible] house but that can all be gone in a
heartbeat because of Charlie and that's what I'm asking you. I know you love your dog,
until this moment, until this accident and I'll give you the benefit of the doubt it was an
accident, okay. You didn't see this coming, okay, but until this moment now you've got a
totally different dog that you're dealing with, okay. You've got a dog that knows it will
attack a human, it will attack another animal and it won't give up and there's nothing you
can do once the dog has made up its mind to do it to prevent that. So [unintelligible]
really want a dog of that nature?

GIZZARELLI:     I love my dog with all my heart and [unintelligible] As far as the
officer claiming that he was attacked by the dog I have no witnesses to that, I didn't see it
and that's the officer's testimony. There's no supporting evidence of that. I saw the dog
attack the horse and I've admitted that. My best suggestion would be that the dog needs

Page 10 of 12

13

some proper training, he needs to be controlled. [unintelligible] And I also noticed in the officer's testimony that he said the horse drops him, he was unconscious, he was dizzy, he was out and he got back up he said the horse and the dog were gone but yet later in his testimony he said that he saw me running after the dog so [unintelligible]

OFC. DENNY: I like to boil things down, these types of issues [unintelligible] and for the record [unintelligible] but the basis of—

GIZZARELLI: Does he have proof? Does he have a bit mark on his boot [unintelligible] Sorry to interrupt you?

OFC. DENNY: No, I understand but he came before me and this is his testimony. It's my job to decide [unintelligible]

GIZZARELLI: Even knowing that the dog has no history of attacking any people?

OFC. DENNY: Well, history or not this is what happened and I'm taking your testimony, I'm taking your word that the dog has no history. Animal Care and Control doesn't have any history of Charlie biting anybody but I don't have any evidence that he has or that he hasn't, I'm just taking your testimony that he hasn't been involved in something like this before. It's a double-edged sword here, okay, and these are the judgments that I have to make.

GIZZARELLI: Well, my final statement would be officer that I truly realize that this is a tragic situation. Many people, other people could have been hurt had the horse come up on the bridge or something or trampled somebody this could have been much more serious. This is still a serious issue, the dog is—the horse is a trained animal, he's been in service for so long, he trusted and powerful, great animal. I just—I just want you to understand that I realize that [unintelligible] that also there's tragedy on both ends.

OFC. DENNY: How long—how long have you had Charlie?

GIZZARELLI: I've had him since he was a puppy?

OFC. DENNY: And where did you get him?

GIZZARELLI: I bought him from a private owner.

OFC. DENNY: Where?

14

GIZZARELLI:     Where? In San Francisco.

OFC. DENNY:     In San Francisco. And has he ever had any obedience training?

GIZZARELLI:     No, just by me. Just self-taught.

OFC. DENNY:     [unintelligible] recommendations officer?

OFFICER:        You know, I would ask that Charlie be [unintelligible]

OFC. DENNY:     I think that's a pretty good suggestion. What I'm going to order is Charlie be [unintelligible] I have fifteen days to make the decision but I'd feel much more comfortable having Charlie in custody until then. [unintelligible] at 6:00 o'clock today.

MSPK:     Yes.

OFC. DENNY:     Into custody [unintelligible]

GIZZARELLI:     Very well. My apologies to the officer [unintelligible] Thank you.

OFC. DENNY:     Officer, is there anything else you'd like to add?

OFC. EVANS:     Just wanted to clarify his statement with reference to my testimony. When I saw him chasing the dog I said I saw him chasing the dog as Charlie approached and also I saw him later when I was sitting in the front seat of the Lexus driving up that hill he was running, walking, running, walking, heading up the hill in the direction that he was told the horse and the dog had gone.

OFC. DENNY:     Thank you. Is there anybody else that would like to testify just upon this matter?

MSPK:     Seeing no one else who would like to testify I would like to close this case and the hearing officer has fifteen days to make his decision. Thank you guys for coming.

**END OF DOCUMENT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Exhibit 2

25
26

[August 23, 2012 Statement of Decision – Charlie to be Killed "Humanely"]

27
28



POLICE DEPARTMENT
CITY AND COUNTY OF SAN FRANCISCO
THOMAS J. CAHILL HALL OF JUSTICE
850 BRYANT STREET
SAN FRANCISCO, CALIFORNIA 94103-4603



EDWIN M. LEE
MAYOR

**STATEMENT OF DECISION**

GREGORY P. SUHR
CHIEF OF POLICE

August 23, 2012

Captain V. Guldbech
Animal Care and Control
1200 15th Street
San Francisco, CA 94103

Dear Captain Guldbech,

On Thursday, August 23, 2012 at San Francisco City Hall, Room 408, a Vicious and Dangerous Dog Hearing was held. The purpose of the hearing was to determine if a black and white Pitbull dog named Charlie (A#319601), owned by Mr. David Gizzarelli, 41 Peralta Avenue #A, is Vicious and Dangerous as defined by Article 1, Section 42(a) of the San Francisco Health Code.

All interested parties gave documentary evidence and verbal testimony.

### FINDINGS

1. On July 6, 2012, Mr. Gizzarelli was running with Charlie off-leash at the dog run area at Crissy Field when the dog Charlie apparently caught sight of a United States Park Police horse named Stoney, being ridden by Officer Eric Evans.

2. The dog Charlie ran directly at Stoney from approximately 200 feet away leaving Mr. Gizzarelli behind while calling out to the dog.

3. The dog Charlie stopped approximately 6 feet short of Stoney and briefly hesitated before attempting to bite Officer Evans on the leg. The bite caused no injury to Officer Evans as the bite was inflicted to Officer Evan's leather riding boot.

4. The dog Charley then bit Stoney on the left front leg and attached itself at which time Stoney reared and threw Officer Evans to the ground. Officer Evans testified that he was temporarily knocked unconscious after the fall and when he became conscious Stoney and the dog Charlie had left the scene.

5. Mr. Gizzarelli was approximately 15 feet from Charlie when Stoney threw Officer Evans. Mr. Gizzarelli testified that due to the danger presented by the dog attacking Stoney and Stoney's attempts to fend off the attack that he was unable to get control of the dog Charlie. He stated that when Stoney and Charlie ran off he gave chase on foot.

6. Officer Evans testified that Stoney ran back to the stables but the stable doors were shut. Charlie caught up with Stoney and pressed the attack inflicting more injuries to the horse.

Statement of Decision
Date: August 23, 2012
RE: Gizzarelli
Pg. 2

    7.    Stoney escaped from Charlie but was again set upon again and attacked
        after running to the stable doors on the other side of the building (which
        were also closed).

    8.    Stoney then ran through the presidio with Charlie in pursuit for
        approximately 1.6 miles before a U.S. Park Police officer riding a police
        motorcycle was able to scare Charlie away from Stoney. Stoney
        continued running another one-half mile before being located and then
        transported back to the stables for veterinary treatment.

    9.    Injuries to Stoney included several bite marks and bleeding gashes to his
        legs, thighs and stomach. Stoney also threw two horse shoes during the
        incident.

    10.    Officer Evans testified that he suffered a concussion and a shoulder injury
        when thrown.

    11.    Mr. Gizzarelli testified that Charlie received injuries to his chest area
        during the incident.

    12.    The attack to Officer Evans and his police horse Stoney by the dog Charlie
        was unprovoked.

## CONCLUSION

Based on the testimony at the hearing, the documents presented, and these findings, I
conclude that:

    1.    The dogs "Charlie" is Vicious and Dangerous under the definitions of
        Article 1, Section 42(a) of the San Francisco Health Code;

    2.    That the restrictions set forth in the San Francisco Health Code would be
        insufficient to protect the health safety and welfare of the community; and

    3.    Therefore I order the dog "Charlie" to be humanely destroyed;

I believe that this decision will protect the health safety and welfare of the community.

Officer J. Denny
Hearing Officer

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Exhibit 3

[December 3, 2012 Ex Parte Motion to Strike
Administrative Record – Hearsay and Not Authenticated]

1  John F. Mounier Jr. (SBN 48377)
2  **APS ANIMAL PROTECTION ATTORNEYS**
   **SAN FRANCISCO BAY AREA**
3  **John@TheAnimalProtector.com**
   35 Miller Avenue, Suite 206
4  Mill Valley, CA 94941
   Tel: (415) 967-8361
5
   Attorneys for David Gizzarelli,
6  Guardian of Charlie
7
8
9        SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
10                           UNLIMITED JURISDICTION
11

| David Gizzarelli, Guardian of Charlie | Case No. CPF 12 512445 |
|---|---|
| Petitioner, | **DAVID (GUARDIAN OF CHARLIE) GIZZARELLI'S IN LIMINE TRIAL MOTION: STRIKING THE "ADMINISTRATIVE RECORD"** |
| VS. | |
| City and County of San Francisco, and DOE 1 through DOE 10 | Date:   Trial - December 6, 2012<br>Time:   9:30 a.m.<br>Dept.:   302 |
| Respondents. | 1'st Amended Petition filed: Sept. 18, 2012 |

20  TO THIS HONORABLE COURT AND TO THE CITY AND COUNTY OF SAN

21  FRANCISCO AND TO THEIR ATTORNEYS OF RECORD:

22  PLEASE TAKE NOTICE THAT Petitioner David Gizzarelli hereby moves this

23  court, in Limine, to strike the so-called "administrative record" filed by

24  Respondent on November 28, 2012.

25         The in Limine trial motion will be on the grounds set forth in Petitioner's

26
27  December 3, 2012 Ex Parte Motion – a true copy is attached as Exhibit 1 to this in

28
-1-
DAVID (GUARDIAN OF CHARLIE) GIZZARELLI'S MOTION IN LIMINE AT TRIAL: STRIKING THE
"ADMINISTRATIVE RECORD"
- DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
- SAN FRANCISCO SUP. CT. CASE NO. CPF 12 512445 -

1  Limine Notice of Trial Motion.

2  At the December 3, 2012 ex parte hearing, the Judge Presiding denied the ex

3  parte motion, without prejudice, and sent a message that the parties would take up

4  the issues at the trial scheduled for Thursday December 6, 2012.

5

6  Further, Petitioner will rely upon documents and papers filed concurrently,

7  all papers and pleadings on file, and upon the argument and points raised in open

8  court.

9

10  DATED:  December 3, 2012

    APS ANIMAL PROTECTION ATTORNEYS

11

12  By

        John F. Mounier Jr.
13      Attorney for David Gizzarelli,
        Guardian of Charlie
14

15

16

17

18

19

20

21

22

23

24

25

26

27

-2-
28  DAVID (GUARDIAN OF CHARLIE) GIZZARELLI'S MOTION IN LIMINE AT TRIAL: STRIKING THE
    "ADMINISTRATIVE RECORD"
    -    DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
         -    SAN FRANCISCO SUP. CT. CASE NO. CPF 12 512445 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit 1

# "David Gizzarelli's Filed Ex Parte Motion to Strike the So-Called "Administrative Record"]

DAVID (GUARDIAN OF CHARLIE) GIZZARELLI'S MOTION IN LIMINE AT TRIAL: STRIKING THE
"ADMINISTRATIVE RECORD"
-   DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
-   SAN FRANCISCO SUP. CT. CASE NO. CPF 12 512445 -

1 | John F. Mounier Jr. (SBN 48377)
2 | **APS ANIMAL PROTECTION ATTORNEYS**
  | **SAN FRANCISCO BAY AREA**
3 | **John@TheAnimalProtector.com**
  | 35 Miller Avenue, Suite 206
4 | Mill Valley, CA 94941
5 | Tel: (415) 967-8361

6 | Attorneys for David Gizzarelli,
  | Guardian of Charlie

ENDORSED
F I L E D
San Francisco County Superior Court

DEC - 3 2012

CLERK OF THE COURT
By: _____ RONNIE OTERO
Deputy Clerk

7

8 | SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO

9 | UNLIMITED JURISDICTION

| 10 | David Gizzarelli, Guardian of Charlie | Case No. CPF 12 512445 |
|----|----|----|
| 11 | | **APPLICATION FOR EX PARTE** |
| 12 | Petitioner, | **ORDER:** |
| | | **(1) TO STRIKE SO-CALLED** |
| 13 | VS. | **"ADMINISTRATIVE RECORD" –** |
| | | **THE "RECORD" IS NOT SIGNED** |
| 14 | City and County of San Francisco, and | **BY ANY PERSON WHO,** |
| 15 | DOE 1 through DOE 10 | **OR AGENCY WHICH,** |
| | | **PURPORTEDLY HAD CUSTODY** |
| 16 | | **OF AND COMPILED IT, AND IS** |
| | Respondents. | **AN UNAUTHENTICATED** |
| 17 | | **HEARSAY DOCUMENT** |
| 18 | | **(2) RE- SETTING HEARING/TRIAL** |
| | | **ON WRIT OF ADMINISTRATIVE** |
| 19 | | **MANDAMUS AND WRIT OF** |
| | | **TRADITIONAL MANDAMUS;** |
| 20 | | **(3) RE- SETTING BRIEFING** |
| | | **SCHEDULE;** |
| 21 | | **AND,** |
| 22 | | **(4) EXTENDING THE TRO** |
| | | **STAYING EUTHANASIA OF** |
| 23 | | **CHARLIE** |
| 24 | | Date: December 3, 2012 |
| 25 | | Time: 11:00 a.m. |
| | | Dept.: 302 |
| 26 | | 1'st Amended Petition filed: Sept. 18, 2012 |
| 27 | | |

-1-
28 | DAVID (GUARDIAN OF CHARLIE) GIZZARELLI'S APPLICATION FOR EX PARTE ORDER (1) SETTING
HEARING/TRIAL ETC
DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
- SAN FRANCISCO SUP. CT. CASE NO. CPF 12 512445 -

1   John F. Mounier Jr. (SBN 48377)
    **APS ANIMAL PROTECTION ATTORNEYS**
2   **SAN FRANCISCO BAY AREA**
    **John@TheAnimalProtector.com**
3   35 Miller Avenue, Suite 206
    Mill Valley, CA 94941
4   Tel:  (415) 967-8361

5
    Attorneys for David Gizzarelli,
6   Guardian of Charlie

7

8           SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO

9                          UNLIMITED JURISDICTION

| David Gizzarelli, Guardian of Charlie | Case No. CPF 12 512445 |
|---|---|
| | **APPLICATION FOR EX PARTE ORDER:** |
| Petitioner, | **(1) TO STRIKE SO-CALLED "ADMINISTRATIVE RECORD" – THE "RECORD" IS NOT SIGNED** |
| VS. | **BY ANY PERSON WHO, OR AGENCY WHICH, PURPORTEDLY HAD CUSTODY** |
| City and County of San Francisco, and DOE 1 through DOE 10 | **OF AND COMPILED IT, AND IS AN UNAUTHENTICATED HEARSAY DOCUMENT** |
| Respondents. | **(2) RE- SETTING HEARING/TRIAL ON WRIT OF ADMINISTRATIVE MANDAMUS AND WRIT OF TRADITIONAL MANDAMUS;** |
| | **(3) RE- SETTING BRIEFING SCHEDULE; AND, (4) EXTENDING THE TRO STAYING EUTHANASIA OF CHARLIE** |
| | Date:    December 3, 2012 |
| | Time:    11:00 a.m. |
| | Dept.:    302 |
| | 1'st Amended Petition filed: Sept. 18, 2012 |

-1-
DAVID (GUARDIAN OF CHARLIE) GIZZARELLI'S APPLICATION FOR EX PARTE ORDER (1) SETTING HEARING/TRIAL ETC
DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
-    SAN FRANCISCO SUP. CT. CASE NO. CPF 12 512445 -

**DAVID GIZZARELLI, GUARDIAN OF CHARLIE (A STAFFORDSHIRE TERRIER), APPLIES EX PARTE FOR ORDERS:**

(1) Striking so-called "Administrative Record" – the record is not signed by any person who, or on behalf of any agency which, purportedly had custody of and produced the "record";

(2) Striking the unauthenticated "Administrative Record" as a Hearsay Document;

(3) Re-Setting briefing schedule if Respondent is allowed time to produce an authenticated "Administrative Record", so that Petitioner has knowledge of what ever legitimate Administrative Record may eventually be produced;

(4) Re-Setting the Trial date if Respondent is allowed time to produce an authenticated "Administrative Record";

and,

(5) Extending the TRO to allow Charlie to live while David Gizzarelli fights for Charlie's life. The existing TRO is through and includes December 7, 2012.

Petitioner must appear ex parte because his reply brief is due today and he cannot and could not determine if an appropriate and authenticated "administrative record" exists.

Identification of Attorney for Respondent (CRC 3.1202(a)):

City and County of San Francisco
City Attorney Dennis Herrera
Office of City Attorney

-2-
DAVID (GUARDIAN OF CHARLIE) GIZZARELLI'S APPLICATION FOR EX PARTE ORDER (1) SETTING HEARING/TRIAL ETC
DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO - SAN FRANCISCO SUP. CT. CASE NO. CPF 12 512445 -

1390 Market Street, Sixth Floor
San Francisco, CA 94102
Attn.: Dennis Herrera, Cheryl Adams, Margaret W. Baumgartner, Bradley A. Russi.

Telephone: 415.554-3964

Disclosure of Previous Ex Parte Application(s) (CRC 3.1202(b)):

On September 18, 2012 Petitioner appeared ex parte seeking a TRO; the TRO (Exhibit 1) was issued.

On November 15, 2012 Petitioner appeared ex parte seeking a Trial Date, Briefing Schedule and Extension of TRO – which were all granted.

Counsel is not aware of any other ex parte applications.

Affirmative Factual Showing for Issuance of requested Ex Parte Orders (CRC 3.1201(c)):

On Thursday November 29, 2012 counsel for petitioner (a sole practitioner) received a PDF copy of the "administrative record" filed by respondent. The "administrative record" was neither signed nor authenticated by "the local agency or its commission, board, officer, or agent which made the decision..." [CCP §1094.6(c)]

Petitioner was served with a hearsay document.

Petitioner does not want to waive his objections to this hearsay, unauthenticated document by disputing its contents on the merits.

A copy of the so-called "administrative record" is attached as **Exhibit 1.**

Petitioner's counsel noticed this ex parte for Monday, December 3,

-3-
DAVID (GUARDIAN OF CHARLIE) GIZZARELLI'S APPLICATION FOR EX PARTE ORDER (1) SETTING HEARING/TRIAL ETC
DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
-   SAN FRANCISCO SUP. CT. CASE NO. CPF 12 512445 -

1    2012 which is the first day that he could be prepared to come to court.

2    Moving party will base this Application for Ex Parte Orders upon the

3    Declarations and Exhibits, upon the Memorandum, upon the Notice, and

4    upon other documents filed concurrently with this Application for Ex Parte

5    Orders.

6

7    CCP § 1094.5. (a) reads in part:

8    All or part of the record of the proceedings
     before the inferior tribunal, corporation, board, or officer may be filed
9    with the petition, may be filed with respondent's points and
     authorities, or may be ordered to be filed by the court.
10

11   CCP §1094.6(c) reads in part:

12   (c) The complete record of the proceedings *shall be prepared by*
     the local agency or its commission, board, officer, or agent which
13   made the decision...

14   *Such record shall include* the transcript of the proceedings, all
15   pleadings, all notices and orders, any proposed decision by a hearing
     officer, the final decision, *all admitted exhibits*, all rejected exhibits in
16   the possession of the local agency or its commission, board, officer, or
     agent, all written evidence, and any other papers in the case.
17

18   Under current circumstances, Petitioner cannot determine from the
19
20   "administrative record" what agency, commission, board, officer or agent who
21   made the decision was involved, if at all, in accepting, safeguarding and compiling
22   the documents that could constitute an administrative record.

23   Petitioner cannot determine what "notice" was purportedly given; cannot
24   determine if any exhibits were admitted; cannot determine what "pleadings" were
25   served [no pleadings were served upon or provided to Petitioner] or relied upon.
26
27   Petitioner requests an order (1) striking the "administrative record"; (2)

-4-
28   DAVID (GUARDIAN OF CHARLIE) GIZZARELLI'S APPLICATION FOR EX PARTE ORDER (1) SETTING
     HEARING/TRIAL ETC
     DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
     -   SAN FRANCISCO SUP. CT. CASE NO. CPF 12 512445 -

1  authorizing Petitioner to proceed as though no "administrative record" exists for

2  the hearing; or, alternatively, (3) ordering Respondent to file a properly

3  authenticated and signed "administrative record", and extending the briefing

4
   schedule and the TRO to allow petitioner time to review a subsequently produced
5
   "administrative record."
6

7  DATED:  December 3, 2012

8
                              **APS ANIMAL PROTECTION ATTORNEYS**
9

10                   By: _____
11                           John F. Mounier Jr.
                             *Attorney for David Gizzarelli,*
12                           *Guardian of Charlie*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                        -5-
28  DAVID (GUARDIAN OF CHARLIE) GIZZARELLI'S APPLICATION FOR EX PARTE ORDER (1) SETTING
                                   HEARING/TRIAL ETC
         DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
              -    SAN FRANCISCO SUP. CT. CASE NO. CPF 12 512445 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit 1

# [November 28, 2012 "administrative record"]

DAVID (GUARDIAN OF CHARLIE) GIZZARELLI'S APPLICATION FOR EX PARTE ORDER (1) SETTING
HEARING/TRIAL ETC
DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
-   SAN FRANCISCO SUP. CT. CASE NO. CPF 12 512445 -

1    **PROOF OF SERVICE**

2    **CASE NAME:** **David Gizzarelli, Guardian of Charlie vs. City and County**
     **Of San Francisco, Et al.**
3    **CASE NUMBER: CPF 12 512445**

4        I declare under penalty of perjury under the laws of the State of California,
5    that the following is true and correct:

6        I am over the age of 18 and not a party or interested in this action. My
7    business address is 35 Miller Avenue, Suite 206, Mill Valley, CA 94941. On the
     date first written below, at North Bay, California, I served the following
8    document(s):

9        **David (Guardian of Charlie) Gizzarelli's Application for Ex Parte Order re**
     **"administrative record" (1) re- Setting Hearing/Trial on Writ of Administrative**
10   **Mandamus and Writ of Traditional Mandamus; (2) re- Setting Briefing**
     **Schedule; and (3) Extending, if Necessary, the TRO**
11

12   XXX (BY PERSONAL SERVICE) I handed the documents to the person named
     below as receiving them (at the Ex Parte Hearing identified in the caption of this
13   pleading)

14   XXXX (BY MAIL) On this date I placed the copies in envelopes addressed to the
15   person(s) at the address(es) below, sealed the envelopes, placed appropriate
     postage on them and personally placed them in the United States mail.
16

17

18   | City and County of San Francisco | Telephone: 415.554-3859 |
     | City Attorney Dennis Herrera | Fax:          415.554-4248 |
19   | Office of City Attorney | |
     | 1390 Market Street, Sixth Floor | |
20   | San Francisco, CA 94102 | |

21

22
     Date: December 3, 2012
23                                        By: _____
24                                        John F. Mounier Jr. or Kim H. Garret

25

26

27
                                    -7-
28   DAVID (GUARDIAN OF CHARLIE) GIZZARELLI'S APPLICATION FOR EX PARTE ORDER (1) SETTING
                                    HEARING/TRIAL ETC
     DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
                    -    SAN FRANCISCO SUP. CT. CASE NO. CPF 12 512445 -

1        **PROOF OF SERVICE**

2    **CASE NAME:**       **David Gizzarelli, Guardian of Charlie vs. City and County**
3                         **Of San Francisco, Et al.**
     **CASE NUMBER: CPF 12 512445**

4
          I declare under penalty of perjury under the laws of the State of California,
5    that the following is true and correct:

6         I am over the age of 18 and not a party or interested in this action. My
7    business address is 35 Miller Avenue, Suite 206, Mill Valley, CA 94941. On the
     date first written below, at North Bay, California, I served the following
8    document(s):

9    **David (Guardian of Charlie) Gizzarelli's Motion in Limine at Trial: Striking the**
                           **"Administrative Record"**
10

11   <u>XXXX</u> (BY MAIL) On this date I placed the copies in envelopes addressed to the
     person(s) at the address(es) below, sealed the envelopes, placed appropriate
12   postage on them and personally placed them in the United States mail.

13   (BY DELIVERY) I caused such documents to be delivered by hand to the offices
14   of the addressee on this date.

15   City and County of San Francisco         Telephone: 415.554-3859
     City Attorney Dennis Herrera             Fax:       415.554-4248
16   Office of City Attorney
     1390 Market Street, Sixth Floor
17   San Francisco, CA 94102
        Attn.: Margaret W. Baumgartner, Esq.
18         Bradley A. Russi, Esq.

19

20

21

22
     Date: December 3, 2012
23
                                              By: _____
24                                            John F. Mounier Jr. or Kim H. Garrett

25

26

27
                                        -4-
28   DAVID (GUARDIAN OF CHARLIE) GIZZARELLI'S MOTION IN LIMINE AT TRIAL: STRIKING THE
                           "ADMINISTRATIVE RECORD"
         -   DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
                   -   SAN FRANCISCO SUP. CT. CASE NO. CPF 12 512445 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# Exhibit 4

25
26

# [Hearing Officer's Declaration]

27
28

1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  CHERYL ADAMS , State Bar #164194
   Chief Trial Deputy
3  MARGARET W. BAUMGARTNER, State Bar #151762
   BRADLEY A. RUSSI, State Bar #256993
4  Deputy City Attorney
   Fox Plaza
5  1390 Market Street, Sixth Floor
   San Francisco, California 94102-5408
6  Telephone:    (415) 554-3964
   Facsimile:    (415) 554-3837
7  E-Mail:       brad.russi@sfgov.org

8
   Attorneys for Respondent
9  CITY AND COUNTY OF SAN FRANCISCO

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                     COUNTY OF SAN FRANCISCO

12                     UNLIMITED JURISDICTION

13
   DAVID GIZZARRELLI, the guardian of      Case No. CPF-12-512445
14 Charlie,
                                           **DECLARATION OF OFFICER JOHN DENNY**
15      Petitioner,
                                           Hearing Date:    Dec. 6, 2012
16      vs.                                Time:            9:30 a.m.
                                           Dept.            302
17 CITY AND COUNTY OF SAN
   FRANCISCO,
18
        Respondent.
19

20

21
        I, John Denny, declare as follows:
22
        1.    I am a Police Officer with the San Francisco Police Department, and I am assigned as
23
   the Hearing Officer for the City and County of San Francisco's Vicious and Dangerous Dog Hearings.
24
   I have personal knowledge of the facts set forth in this declaration except for those matters based on
25
   information and belief. As to those matters, I believe them to be true. I am competent to testify to the
26
   facts set forth in this declaration.
27

28
                                              1

   Guldbech Declaration. Case No. CPF-12-512445                    c:\docume~1\denny\locals~1\temp\not

1     2.     I have reviewed the 53-page Administrative Record filed by the City in this writ
2   proceeding.

3     3.     The 53-page Administrative Record filed by the City is a true and correct copy of the
4   entire administrative record as provided to me at the hearing that took place on August 23, 2012.

5     4. The only "instruction" I gave to ACC in this matter was to release Charlie to his owner
6   when Charlie first was in custody. I did not evaluate the merits of the matter prior to the hearing. I
7   did not "solicit" information from Mr. Gizzarrelli or interview him, nor did I inform Mr. Gizzarrelli
8   that he "did not have to worry" about the hearing. My conversation with Mr. Gizzarrelli was
9   extremely brief. I did not rely on anything discussed in that conversation in making my decision.

10     Declared under penalty of perjury under the laws of the State of California. Executed on
11   December 4, 2012 in San Francisco, California.

Officer John Denny

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

Guldbech Declaration. Case No. CPF-12-512445                c:\docume~1\ldenny\locals~1\temp\not

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Exhibit 5

25

26

[Objection to Ex Parte Communications Between Hearing Officer and City Attorney]

27

28

-30-

1

John F. Mounier Jr. (SBN 48377)

**APS ANIMAL PROTECTION ATTORNEYS**

2

**SAN FRANCISCO BAY AREA**

**John@TheAnimalProtector.com**

3

35 Miller Avenue, Suite 206

4

Mill Valley, CA 94941

Tel: (415) 967-8361

5

6

Attorneys for David Gizzarelli,

Guardian of Charlie

7

8

ENDORSED

F I L E D

San Francisco County Superior Court

DEC - 5 2012

CLERK OF THE COURT

By: _____ RONNIE OTERO

Deputy Clerk

9

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO

10

UNLIMITED JURISDICTION

11

| David Gizzarelli, Guardian of Charlie | Case No. CPF 12 512445 |
|---|---|
| Petitioner, | **DAVID (GUARDIAN OF CHARLIE) GIZZARELLI'S OBJECTION TO CITY ATTORNEY DENNIS HERRERA'S PROHIBITED EX PARTE COMMUNICATIONS WITH HEARING OFFICER J. DENNY** |
| VS. | |
| City and County of San Francisco, and DOE 1 through DOE 10 | |
| Respondents. | Date:   Trial - December 6, 2012<br>Time:   9:30 a.m.<br>Dept.:  302 |
| | 1'st Amended Petition filed: Sept. 18, 2012 |

22

Common sense, common decency, and California law prohibit ex parte

23

communications between a party and a hearing officer.

24

City Attorney Dennis Herrera violated California law by communicating

25

with the purportedly impartial hearing officer to prepare a declaration signed by

26

27

the hearing officer and filed with this court.

-1-

28

1    Both City Attorney Dennis Herrera and Hearing Officer J. Denny breached

2  their duties owed to the citizens of San Francisco.

3    This misconduct is specific evidence of the "unfair trial" afforded Charlie &

4  David.

5

6    Petitioner Prays that the Response to the Petition be Stricken and the Writ

7  issued.

8

    DATED: December 5, 2012

9                              APS ANIMAL PROTECTION ATTORNEYS

10

11                              By:

                                    John F. Mounier Jr.
12                                  *Attorney for David Gizzarelli,*
                                    *Guardian of Charlie*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                    -2-
28    DAVID (GUARDIAN OF CHARLIE) GIZZARELLI'S OBJECTION TO CITY ATTORNEY DENNIS
      HERRERA'S PROHIBITED EX PARTE COMMUNICATIONS WITH HEARING OFFICER J. DENNY
      -   DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
               -   SAN FRANCISCO SUP. CT. CASE NO. CPF 12 512445 -

1                 **PROOF OF SERVICE**

2    **CASE NAME:**      **David Gizzarelli, Guardian of Charlie vs. City and County**
                            **Of San Francisco, Et al.**

3    **CASE NUMBER: CPF 12 512445**

4
      I declare under penalty of perjury under the laws of the State of California,

5    that the following is true and correct:

6
      I am over the age of 18 and not a party or interested in this action.  My

7    business address is 35 Miller Avenue, Suite 206, Mill Valley, CA 94941.  On the
     date first written below, at North Bay, California, I served the following

8    document(s):

9    **David (Guardian of Charlie) Gizzarelli's Objection to City Attorney Dennis**

10    **Herrera's Prohibited Ex Parte Communications with Hearing Officer J. Denny**

11    <u>XXXX </u>(BY MAIL)  On this date I placed the copies in envelopes addressed to the
     person(s) at the address(es) below, sealed the envelopes, placed appropriate

12    postage on them and personally placed them in the United States mail.

13
    XXXX (BY DELIVERY)  I caused such documents to be delivered by hand to the

14    offices of the addressee on this date.

15    City and County of San Francisco       Telephone: 415.554-3859
     City Attorney Dennis Herrera         Fax:      415.554-4248

16    Office of City Attorney
     1390 Market Street, Sixth Floor

17    San Francisco, CA 94102
      Attn.: Margaret W. Baumgartner, Esq.

18

19    Date:  December 5, 2012

20                            By: _____
                             John F. Mounier Jr. or Kim H. Garrett

21

22

23

24

25

26

27
                             -3-

28    DAVID (GUARDIAN OF CHARLIE) GIZZARELLI'S OBJECTION TO CITY ATTORNEY DENNIS
HERRERA'S PROHIBITED EX PARTE COMMUNICATIONS WITH HEARING OFFICER J. DENNY
DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
SAN FRANCISCO SUP. CT. CASE NO. CPF 12 512445 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# Exhibit 6

25

26 [Concealment of Charlie Incident]

27

28

-31-

1 | DENNIS J. HERRERA, State Bar #139669
City Attorney

REC'D NOV 2 8 2012

2 | CHERYL ADAMS , State Bar #164194
Chief Trial Deputy

3 | MARGARET W. BAUMGARTNER, State Bar #151762
BRADLEY A. RUSSI, State Bar #256993

4 | Deputy City Attorney
Fox Plaza

5 | 1390 Market Street, Sixth Floor
San Francisco, California 94102-5408

6 | Telephone: (415) 554-3964
Facsimile: (415) 554-3837

7 | E-Mail: brad.russi@sfgov.org

8

Attorneys for Respondent

9 | CITY AND COUNTY OF SAN FRANCISCO

10

SUPERIOR COURT OF THE STATE OF CALIFORNIA

11

COUNTY OF SAN FRANCISCO

12

UNLIMITED JURISDICTION

13

DAVID GIZZARRELLI, the guardian of | Case No. CPF-12-512445

14 | Charlie,

**ADMINISTRATIVE RECORD**

15 | Petitioner,

| | |
|---|---|
| Hearing Date: | Dec. 6, 2012 |
| Hearing Judge: | Hon. H. Kahn |
| Time: | 9:30 a.m. |
| Place: | 302 |
| Date Action Filed: | August 28, 2012 |
| Trial Date: | Not Set |

16 | vs.

17 | CITY AND COUNTY OF SAN
FRANCISCO,

18

Respondent.

19

20

21

22

23

24

25

26

27

28

1

n:\lit\li2012\130251\00811072.doc

1    Attached is a true and correct copy of the Administrative Record from the Vicious and

2  Dangerous Dog Hearing on August 23, 2012.

3  Dated: November 28, 2012

4                                        DENNIS J. HERRERA
                                         City Attorney
5                                        CHERYL ADAMS
                                         Chief Trial Deputy
6                                        MARGARET W. BAUMGARTNER
                                         Deputy City Attorney
7

8                                        By:
9                                           MARGARET W. BAUMGARTNER

10                                       Attorneys for Respondent
                                         CITY AND COUNTY OF SAN FRANCISCO
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                         2

Admin. Record, Case No. CPF-12-512445                          n:\lit\li2012\130251\00811072.doc

Memo No: M1205

Memo Date: 06/15/12   Memo Type: NOTE   Memo Subtype:

Memo Text:

6/15/12  5:22PM  I HAD RO SPEAK W/RO ABOUT FIXING DOG OR NOT.   I TOLD RO WE CAN GIVE HM A BREAK W/THE KEEP FEES ONLY.  HE'LL HAVE TO PAY $100 NEUTER, VACCS $22, LIC $20.  MB

6/15/12  6:06PM  PER KAT, THEY ARE PAYING FEES TODAY $142.00.   DOG PUT ON S/N LIST. BING LEE ASKED THAT RABIES AND M/C BE HELD FOR SATURDAY.    NMC

6/16/12  12:05PM  PAGED 1ST FLOOR FOR, TIM TOOK MICROCHIP AND RABIES REQUEST. M/C

06/18/12  DID NOT TRANSPORT DOG TO THE SPCA S/N CLINIC.  **********WHEN I WENT TO LEASH THE DOG LUNGED AND TRIED TO BITE ME.**********  LEFT VMAIL FOR AC21 AND ADVISED ACA'S.  PINK SIGNED FOR STAFF SAFETY AND CHANGED KENNEL WINDOW BACK TO 111 CUSTODY.  COB25

6/18/12  10:26AM  THE RO CALLED ASKING IF DOG WAS READY.  I ASKED CS ABOUT IT, SHE'LL REQUEST BD TO DO IF POSSIBLE..  CS ASKED ME TO NOT INFORM RO ABOUT DOG TRYING TO BITE.  """"""""""""""""PLEASE DO NOT INFORM RO ABOUT ATTENT TO BITE AT ALL""""""""""""""".  I TOLD DAVID NOT TO WORRY, WE'LL CONTACT HIM WHEN HE IS READY.  MB

""""""""""""""""PLEASE DO NOT INFORM RO ABOUT ATTENT TO BITE AT  . ALL""""""""""""""".MB

6/18/12 WILL ASK DR. BING TO NEUTER TOMORROW IN HOUSE IF POSSIBLE. CS
6/19/12--neutered by dr. bing--bd

6/19/12 12:50PM I CALLED RO LMOM OK TO PU TOMORROW BRING RECEIPT AND RING BELL B/C WE'RE CLOSED.ML

6/19/12 3:30PM LETTER TO RO RETURN:  RTS, ATTEMPTED, NOT KNOWN.  UNABLE TO FORWARD.  LETTER WAS SENT TO COUNTY JAIL.  NUVIA

6/20/12 4:17PM OWNERS REDEEMING CHARLIE. MSS

Memo LISTBOX:
MEMO_NO MEMO_DATE MEMO_TYPE MEMO_SUBTYPE MEMO_TEXT
---------------------------------------------------------------------------

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 7

[Order Denying Writ]

-32-

VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES AND OTHER RELIEF
-   DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
-   U.S.D.C, NORTHERN DISTRICT OF CA CASE NO.               -

1  John F. Mounier Jr. (SBN 48377)
2  **APS ANIMAL PROTECTION ATTORNEYS**
   **SAN FRANCISCO BAY AREA**
3  **John@TheAnimalProtector.com**
   35 Miller Avenue, Suite 206
4  Mill Valley, CA 94941
   Tel: (415) 967-8361
5
   Attorneys for David Gizzarelli,
6  Guardian of Charlie
7
8
9        SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
10                        UNLIMITED JURISDICTION

| | |
|---|---|
| 11  David Gizzarelli, Guardian of Charlie | Case No. CPF 12 512445 |
| 12 | **DAVID (GUARDIAN OF CHARLIE)** |
| 13                        Petitioner, | **GIZZARELLI'S NOTICE OF** **ORDER DENYING WRIT OF** |
| 14  VS. | **ADMINISTRATIVE MANDAMUS** |
| 15  City and County of San Francisco, and | |
| 16  DOE 1 through DOE 10 | Dept.:  302 |
| 17                        Respondents. | 1'st Amended Petition filed: Sept. 18, 2012 |
| 18 | |

19  PLEASE TAKE NOTICE THAT the above court issued the attached Order
20
21  Denying Writ of Administrative Mandamus on December 10, 2012.
22
23  DATED:  December 24, 2012
                          **APS ANIMAL PROTECTION ATTORNEYS**
24
25                        By: _____
                              John F. Mounier Jr.
26                            *Attorney for David Gizzarelli,*
                              *Guardian of Charlie*
27
                                          -1-
28      DAVID (GUARDIAN OF CHARLIE) GIZZARELLI'S NOTICE OF ORDER DENYING WRIT OF
                              ADMINISTRATIVE MANDAMUS
          -  DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
              -  SAN FRANCISCO SUP. CT. CASE NO. CPF 12 512445 -

1   DENNIS J. HERRERA, State Bar #139669
    City Attorney
2   CHERYL ADAMS , State Bar #164194
    Chief Trial Deputy
3   MARGARET W. BAUMGARTNER, State Bar #151762
    BRADLEY A. RUSSI, State Bar #256993
4   Deputy City Attorney
    Fox Plaza
5   1390 Market Street, Sixth Floor
    San Francisco, California 94102-5408
6   Telephone:    (415) 554-3859
    Facsimile:    (415) 554-3837
7   E-Mail:    margaret.baumgartner@sfgov.org

8
    Attorneys for Respondent
9   CITY AND COUNTY OF SAN FRANCISCO

**F I L E D**
San Francisco County Superior Court

DEC 1 0 2012

CLERK OF THE COURT
BY: _____
Deputy Clerk

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                      COUNTY OF SAN FRANCISCO

12                      UNLIMITED JURISDICTION

13

| | |
|---|---|
| DAVID GIZZARRELLI, the guardian of Charlie,<br><br>     Petitioner,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>     Respondent. | Case No. CPF-12-512445<br><br>[PROPOSED] ORDER DENYING WRIT OF ADMINISTRATIVE MANDAMUS<br><br>Hearing Date:    Dec. 6, 2012<br>Hearing Judge:   Hon. Robertson<br>Time:            9:30 a.m.<br>Place:           302<br><br>Date Action Filed:   August 28, 2012<br>Trial Date:          Not Set |

22      The petition for writ of mandate is DENIED. Even if respondent failed to provide petitioner

23   with written notice of the hearing (the evidence is conflicting, see AR 44 and 50; petitioner's reply

24   declaration), petitioner received actual notice, and waived the defect by appearing at the hearing and

25   arguing the merits.

26

27                                          1

28   [Proposed] Order Denying Writ of Admin Mandamus
     Gizzarelli v. CCSF – Case No: CPF-12-512445

c:\documents and
settings\pburton\local
settings\temporary internet
files\olk2e\00812570.docx

1    Officer John Denny properly authenticated the administrative record. Petitioner has not shown

2    that the Administrative Record contains any improper material.

3    Substantial evidence supported respondent's decision. Petitioner's argument that the decision

4    was based on triple hearsay is incorrect. Officer Evans witnessed the attack and testified at the

5    hearing. Hearsay is admissible at an administrative hearing.

6    The hearing complied with the San Francisco Health Code and did not violate California Food

7    & Agricultural Code § 31621.

8    The standard of proof at the hearing under the San Francisco Health Code and California Food

9    & Agricultural Code § 31621 is preponderance of the evidence. The standard of review before this

10    court is substantial evidence. See *Zuniga v. San Mateo Dept. of Health Services* (1990) 218

11    Cal.App.3d 1521, 1530-1531. While the Court finds Officer Denny's multi-faceted role in this case as

12    witness, interviewer, and hearing officer troubling, petitioner did not timely raise that objection at the

13    hearing or demonstrate bias. Petitioner fails to demonstrate an abuse of discretion.

14    **IT IS SO ORDERED.**

15

16    Dated: _December 14, 2012_                              

17                                    JUDGE OF THE SUPERIOR COURT

18                                      A. JAMES ROBERTSON, II

19

20

21

22

23

24

25

26

27

28    [Proposed] Order Denying Writ of Admin Mandamus
        Gizzarelli v. CCSF – Case No: CPF-12-512445

c:\documents and
settings\pburton\local
settings\temporary internet
files\olk2e\00812570.docx

1 | **PROOF OF SERVICE**

2 | **CASE NAME:**     **David Gizzarelli, Guardian of Charlie vs. City and County**
3 | **Of San Francisco, Et al.**
    **CASE NUMBER: CPF 12 512445**

4

5 |     I declare under penalty of perjury under the laws of the State of California, that the following is true and correct:

6 |     I am over the age of 18 and not a party or interested in this action. My
7 | business address is 35 Miller Avenue, Suite 206, Mill Valley, CA 94941. On the date first written below, at North Bay, California, I served the following
8 | document(s):

9 | **David (Guardian of Charlie) Gizzarelli's Notice of Order Denying Writ of**
10 | **Administrative Mandamus**

11 | <u>XXXX</u> (BY MAIL) On this date I placed the copies in envelopes addressed to the person(s) at the address(es) below, sealed the envelopes, placed appropriate
12 | postage on them and personally placed them in the United States mail.

13 |     (BY DELIVERY) I caused such documents to be delivered by hand to the
14 | offices of the addressee on this date.

15 | City and County of San Francisco       Telephone: 415.554-3859
    City Attorney Dennis Herrera       Fax:       415.554-4248
16 | Office of City Attorney
17 | 1390 Market Street, Sixth Floor
    San Francisco, CA 94102
18 |     Attn.: Margaret W. Baumgartner, Esq.

19

20

21

22

23 | Date: December 24, 2012

       By:_____
24 |        John F. Mounier Jr. or Kim H. Garrett

25

26

27

          -2-
28 | DAVID (GUARDIAN OF CHARLIE) GIZZARELLI'S NOTICE OF ORDER DENYING WRIT OF
ADMINISTRATIVE MANDAMUS
- DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
- SAN FRANCISCO SUP. CT. CASE NO. CPF 12 512445 -

1  John F. Mounier Jr. (SBN 48377)
2  **APS ANIMAL PROTECTION ATTORNEYS**
   **SAN FRANCISCO BAY AREA**
3  **John@TheAnimalProtector.com**
   35 Miller Avenue, Suite 206
4  Mill Valley, CA 94941
   Tel:  (415) 967-8361
5
   Attorneys for David Gizzarelli,
6  Guardian of Charlie
7
8
9  UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
10                         CALIFORNIA

11  | David Gizzarelli, Guardian of Charlie | Case No. |
    |---|---|
12  | | **DAVID (GUARDIAN OF CHARLIE)** |
13  | Petitioner, | **GIZZARELLI'S VERIFICATION** |
    | | **OF COMPLAINT** |
14  | VS. | |
15  | City and County of San Francisco, and | |
16  | DOE 1 through DOE 10 | |
17  | Respondents. | |
18  | | |

19                        Verification
20
21  I, David Gizzarelli, have read the foregoing complaint, and declare under penalty
    of perjury under the law of California that the foregoing is true and correct to the
22  best of my knowledge, and if sworn I could competently testify to the same based
    upon personal knowledge except as to matters that are stated to be on information
23  and belief.

24  DATED:  December 27, 2012

25
26                        By: _Daund A. Gizzarelli_
                              *David Gizzarelli,*
27                            *Guardian of Charlie*

28                                   -1-

# PROOF OF SERVICE

**CASE NAME:**     **David Gizzarelli, Guardian of Charlie vs.  City and County Of San Francisco, Et al.**

**CASE NUMBER:**

I declare under penalty of perjury under the laws of the State of California, that the following is true and correct:

I am over the age of 18 and not a party or interested in this action.  My business address is 35 Miller Avenue, Suite 206, Mill Valley, CA 94941.  On the date first written below, at North Bay, California, I served the following document(s):

**David (Guardian of Charlie) Gizzarelli's Federal Court Complaint**

XXXX (BY MAIL)  On this date I placed the copies in envelopes addressed to the person(s) at the address(es) below, sealed the envelopes, placed appropriate postage on them and personally placed them in the United States mail.

(BY DELIVERY)  I caused such documents to be delivered by hand to the offices of the addressee on this date.

City and County of San Francisco          Telephone: 415.554-3859
City Attorney Dennis Herrera               Fax:        415.554-4248
Office of City Attorney
1390 Market Street, Sixth Floor
San Francisco, CA 94102
 Attn.: Margaret W. Baumgartner, Esq.

Date: _____

By: _____
John F. Mounier Jr. or Kim H. Garrett

-33-
VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES AND OTHER RELIEF
- DAVID GIZZARELLI, GUARDIAN OF CHARLIE V. CITY AND COUNTY OF SAN FRANCISCO -
- U.S.D.C, NORTHERN DISTRICT OF CA CASE NO.          -